

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-20-2006

# USA v. Isley

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3942

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Isley" (2006). *2006 Decisions.* Paper 438.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/438

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————

No. 04-3942

————————

UNITED STATES OF AMERICA

v.

RUDOLPH ISLEY and ELAINE ISLEY
Appellants

————————

Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 99-cv-04449)
District Judge:  Honorable William J. Martini

————————

Argued July 13, 2006
Before:  SMITH, WEIS, and ROTH, Circuit Judges.

Filed: September 20, 2006

Michael I. Saltzman
Amy Robinson (Argued)
White & Case
1155 Avenue of the Americas
New York, NY  10036
        Attorneys for Appellants

Richard Farber
Annette M. Wietecha (Argued)
U.S. Department of Justice
Tax Division
P.O. Box 502
Washington, DC  20044
        Attorneys for Appellee

_____

OPINION
_____

WEIS, Circuit Judge.

This appeal is from the District Court's grant of the United States' motion for summary judgment against defendants Rudolph and Elaine Isley for unpaid taxes and interest. The issues before us in this appeal pertain only to defendant Rudolph Isley individually. The parties have not appealed the amounts assessed against Rudolph and Elaine jointly.

The controversy is founded in the substantive consolidation of Rudolph's bankruptcy estate with those of his two brothers, Ronald Isley and O'Kelly Isley and the resulting allocation of assets to the brothers' tax liabilities. We conclude that the District Court did not err in upholding the government's unequal distribution of estate assets to the tax liabilities of the brothers. However, a genuine issue of material fact remains with respect to the manner in which the IRS credited payments by the consolidated bankruptcy estate to the respective liabilities of the brothers and the estate. Accordingly, we will remand for the resolution of that limited issue.

I.

Because this is a Not Precedential Opinion, we recite only the facts necessary to our review of the matter before us.

2

Rudolph, Ronald, and O'Kelly Isley were all members of a music group called the Isley Brothers that obtained some fame and wealth beginning in the 1960s. But, in 1984, each of the brothers filed individual petitions for bankruptcy under Chapter 11 of the Bankruptcy Code. After several unsuccessful attempts at reorganization, the proceedings were converted to Chapter 7 and the bankruptcy court substantively consolidated the individual estates in 1989. None of the brothers immediately objected, but in 1991 Rudolph Isley attempted unsuccessfully to vacate the consolidation.

In April 1991, the bankruptcy court entered a consent order determining the extent of the Internal Revenue Service's claims for income taxes, pre-petition interest and penalties against each of the Isley brothers for the years 1971-76, 1978 and 1981-1982. The bankruptcy trustee paid these amounts in full from the assets of the consolidated estate on March 29, 1991. The consent order provided that it did not discharge any further claims against the individual debtors.

Following the payment in full of the liabilities under the consent order, it appears the trustee remitted to the Internal Revenue Service an additional $3,086,338.60 in a series of checks from April 11, 1991 through November 15, 1994 from the estate to be applied to the tax liabilities of the individual debtors and the estate. Some of the checks the trustee submitted to the IRS identified the tax account to which the funds should be allocated, while others did not provide such a designation.[1]

---

[1]Some of the copies of the checks in the appendix are unreadable.

After the trustee paid the amounts due under the consent order, he reported his intention to remit the remaining assets of the estate to the IRS in payment of outstanding tax liabilities of the three brothers, but did not specify any allocation among them.

Rudolph alleges that of the $3,086,338.60 of the post-consent order payments, the IRS credited $81,974.15 to Rudolph's individual tax liability, $82,154.37 to Ronald's tax liability, and $1,592,687.20 to O'Kelly Isley's tax liability. Rudolph contends that $1,683,015.70 remains unaccounted for.

The IRS asserts that of this amount, $1,659,826.78 was applied to the tax liability of the consolidated estate. Apparently, the IRS calculations are based on records that were not revealed to Rudolph until this case was on appeal and are encoded in such a fashion that they require explanation.[2]

In 1999, the government initiated this proceeding against Rudolph and Elaine Isley for the collection of post-petition interest that accrued on taxes from 1974, 1976, 1978, and 1982, as well as for post-petition taxes on income of Rudolph and his wife Elaine. As is relevant to the issues before us, the District Court concluded: (1) the government's assessments were entitled to a presumption of correctness; (2) the consent decree was *res judicata* with respect to Rudolph Isley's tax liability for all of the years in the consent decree and thus was the appropriate basis for calculating post-petition interest

---

[2]We note that the amounts identified by both Rudolph and the IRS add to more than $3,086,338.60.

4

that accrued on taxes for those years; and (3) the government was not required to credit to Rudolph's tax liabilities any of the estate assets that the trustee remitted to the IRS. The District Court thus held that Rudolph was liable for post-petition interest on the amount of the consent order as calculated by the government for the tax years 1974, 1976, 1978, and 1982.

On appeal, defendants contend: (1) that the District Court erred in permitting the unequal distribution of estate assets to the tax liabilities of the brothers; and (2) that there is a genuine issue of material fact with respect to Rudolph Isley's tax liability because the IRS did not explain where it allocated all of the estate assets nor why it allocated estate assets as it did.

## II.

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 and its review of a district court's order granting summary judgment is plenary. Reese Bros., Inc. v. United States, 447 F.3d 229, 232 (3d Cir. 2006) (citing Camiolo v. State Farm Fire & Cas. Co., 334 F.3d 345, 354 (3d Cir. 2003)). A court may grant summary judgment if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A motion for summary judgment will not be defeated by "the mere existence" of some disputed facts, but will be

5

denied when there is a genuine issue of material fact. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).

III.

Initially, we note that Rudolph's complaint about unequal allocation of estate assets among the three brothers has surface appeal, but does not survive analysis. Against the background of the duty of the IRS to protect the public fisc, the situation here is similar to that of a joint and several obligation with a creditor's right to secure satisfaction from any one of the debtors.

Rudolph who was represented in the bankruptcy proceedings could have, but did not, object to the trustee's announced intention to distribute the remaining estate's funds to the IRS without allocation between the debts of the brothers.

The remedy generally available among joint and several obligors is for contribution for excess payments. Therefore, it appears that Rudolph's claim that O'Kelly Isley received unwarranted special treatment states a basis for contribution from his estate. Indeed, we note that Rudolph in fact has filed such a claim in probate proceedings in New Jersey. Thus, the District Court did not err in upholding the unequal allocation of estate assets.

Next, as to the defendants' contention that there is an issue of material fact, the District Court correctly ruled that the consent order precluded any further attack by Rudolph on the amounts listed for the years covered by the order. "We give preclusive effect to issues parties agree to decide by consent decree." <u>In re Graham</u>, 973 F.2d 1089,

6

1097 (3d Cir. 1992). Thus, these amounts are also the appropriate bases for determining the interest due on those taxes.

A tax liability determined by the IRS, including a deficiency assessment, is generally afforded a presumption of correctness. Anastasato v. Commissioner, 794 F.2d 884, 886 (3d Cir.1986). The presumption of correctness "is a procedural device that places the burden of producing evidence to rebut the presumption on the taxpayer." Id. at 886 (citing United States v. Janis, 428 U.S. 433, 441 (1976)). The ultimate burden of persuasion also rests with the taxpayer. Id. at 887 (citing Sullivan v. United States, 618 F.2d 1001, 1008 (3d Cir.1980)). However, "even if the Commissioner is entitled to the initial presumption of correctness, the taxpayer must be given the opportunity to prove that the determination was incorrect." Id.

The government's calculation of Rudolph's total post-petition liability is entitled to a presumption of correctness, though it is very weak in this case because of the IRS's restatements of its computation. Rudolph Isley does not cite any law that would permit this court to relieve him of liability for post-petition interest that accrued on the tax liabilities agreed to by the parties in the consent order. Nonetheless, there remains an unsettled issue of material fact with respect to the allocation of post-consent order payments made by the trustee to the IRS.

The preclusive effect of the consent order is irrelevant to the issue of whether assets of the consolidated estate have been paid to the IRS, but not allocated to any of the brother's tax liabilities or the liability of the estate. The tax transcripts, which

7

were not made available until after the District Court issued its opinion, do not clearly explain to which tax accounts the funds were credited. These "transcripts" are encoded in such a fashion that they must be explained by the IRS. Thus, there is a genuine issue of material fact about the amount of Rudolph Isley's outstanding tax liability.

The government notes that the "consolidated bankruptcy estate was a taxable entity that had substantial tax liabilities of its own" and asserts that it credited many of the funds from the trustee's final distribution to the tax liability of the bankruptcy estate itself. According to the government, these funds included a "check for $1,430,000 [that] was applied to the estate's 1990 tax liability," a check for $85,100 that was applied to the estate's 1991 liability, and a check for $144,726.78 that was applied to the estate's 1989 taxes due.

It appears from tax transcripts included in the record on appeal that the checks were in fact credited to some account. The record is quite unclear, however, so it is not easy to determine exactly to which tax liability the funds were credited. This uncertainty about the distribution of substantial assets of the consolidated estate precludes granting summary judgment at this stage of the litigation.

We have examined carefully the painstaking opinion of the District Court and find no reversible error. It is only the unsettled matter of the IRS's allocation of the trustee's payment of $1,683,015.70[3] that causes us some discomfort. We believe that the

----

[3]This is the amount Rudolph alleges the IRS has not allocated to an appropriate tax account. As we noted above, the tax transcripts do not provide us with

8

defendant is entitled to have that resolved by the District Court and remand only for that purpose.

Accordingly, we will remand to the District Court only with respect to the issue of the IRS's allocation of payments made by the trustee following the satisfaction of the consent order. In all other respects, we find no reversible error in the District Court's rulings.

---

sufficient guidance to determine exactly how the IRS allocated estate funds.